UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. **CR-08-6057-LRS** |
| Plaintiff, ) | |
| ) | **ORDER DENYING** |
| v. ) | **MOTION TO DISMISS** |
| BENJAMIN DAVIS GROTE, ) | |
| Defendant. ) | |

**BEFORE THE COURT** is the Defendant's Motion To Dismiss (Ct. Rec. 63). This motion was heard with oral argument on March 23, 2009. Robert A. Ellis, Esq., Assistant U.S. Attorney, argued on behalf of the Government. Kraig Gardner, Esq., argued on behalf of the Defendant.

Defendant's motion seeks dismissal of Counts 1 and 2 of the Second Superseding Indictment charging him with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. Sections 922(g)(8) and 924(a)(2). Section 922(g)(8) makes it unlawful for a person to possess a firearm who is subject to a court order that:

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child;
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child

**ORDER DENYING**
**MOTION TO DISMISS-         1**

that would reasonably be expected to cause physical injury.[1]

Pursuant to the U.S. Supreme Court's recent decision in *District of Columbia v. Heller*, \_\_\_\_\_ U.S. \_\_\_\_\_, 128 S.Ct. 2783 (2008), which clarified that an individual has a right to possess a firearm unconnected with service in a militia, Defendant asserts application of 18 U.S.C. Section 922(g)(8) to him violates his Second Amendment rights.[2]  Because of *Heller*, Defendant contends this court should use "strict scrutiny" to analyze the application of Section 922(g)(8) to his particular circumstance.

In *Heller*, the Supreme Court struck down a District of Columbia law which banned handgun possession by private citizens and required that other types of firearms be rendered inoperable for immediate use in the home.  The Court concluded the D.C. law would be unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights."  128 S.Ct. at 2817.  The Court also acknowledged, however, that the right to bear arms under the Second Amendment is not unconditional:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on long-standing prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the

---

[1] The term "intimate partner" includes "a former spouse of the person."  18 U.S.C. Section 921(a)(32).  Section 924(a)(2) sets forth the penalties for violation of 18 U.S.C. Section 922(g).

[2] Defendant's opening memorandum seemed to mount a "facial" challenge to Section 922(g)(8), but his reply brief and oral argument confirm it is an "as applied" challenge.  With a "facial" challenge, the challenger must establish that no set of circumstances exist under the legislative act which would be valid.  *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987).  An "as-applied" challenge contends the law is unconstitutional as applied to the litigant's particular circumstance, even though the law may be capable of valid application to others.  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

**ORDER DENYING MOTION TO DISMISS-**         **2**

> carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 2816-17.

The *Heller* Court expressly disavowed any intention of setting a definitive standard of review in Second Amendment cases and instead left that issue to be sorted out in subsequent rulings. 128 S.Ct. at 2821. The Court, however, rejected the rational basis test, stating that it "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right," such as "the right to keep and bear arms." *Id*. at 2817 n. 27. Under the rational basis test, a law will not be held unconstitutional unless no conceivable, legitimate basis rationally supports it. *Tri-health, Inc. v. Bd. of Commissioners*, 430 F.3d 783, 790 (6th Cir. 2005). The law's legitimacy "may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns*, 508 U.S. 307, 315, 113 S.Ct. 2096 (1993). On the other hand, to satisfy the strict scrutiny test, a law must be "narrowly tailored to achieve a compelling governmental interest." *Abrams v. Johnson*, 521 U.S. 74, 82, 117 S.Ct. 1925 (1997). Courts generally apply strict scrutiny to laws that interfere with fundamental constitutional rights or that involve suspect classifications such as race and national origin. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16-17, 93 S.Ct. 1278 (1973).

Several district courts have analyzed the constitutionality of 18 U.S.C. Section 922(g)(8) in light of *Heller* and all have concluded that it does not violate the Second Amendment. Defendant acknowledges these cases, but contends they either fail to do the "constitutional math" (i.e., not doing the strict scrutiny analysis), or are distinguishable from his case.

One of these cases is *United States v. Knight*, 574 F.Supp.2d 224, 225-26 (D. Me. 2008). In that case, the district court noted that *Heller* made no specific reference to prohibitions on firearms possession by defendants subject to domestic abuse protection orders, a prohibition that is not as "longstanding" as the

**ORDER DENYING**
**MOTION TO DISMISS-         3**

prohibition on felons possessing firearms.[3]  The court concluded, however, that *Heller* did not make Section 922(g)(8) unconstitutional.  Said the court in relevant part:

> Unlike *Heller*, the §922(g)(8) crime is not an outright ban on firearm possession. Instead, the prohibition lasts only as long as the underlying state court order is in effect. And the scope of the prohibition is actually quite narrow. . . . Reducing domestic violence is a compelling government interest . . . and 922(g)(8)'s temporary prohibition, while the state court order is outstanding, is narrowly tailored to that compelling interest. [Citations omitted].  The threatened conduct that is a prerequisite to the prohibition is serious: "harassing, stalking, threatening," or other conduct that would cause "reasonable fear of bodily injury"; and the court order must make a specific finding of "a credible threat to the physical safety" of an intimate partner or child or an explicit prohibition on the use of force "that would reasonably be expected to cause bodily injury." . . . These are narrowly crafted limits on when a citizen may possess a firearm and well tuned to the legitimate concerns of avoiding serious physical injury to a partner or child.
>
> . . . .
>
> The defendant makes a number of other arguments that are premised on what he believed at the time he tried to purchase the firearm, what his lawyer told him, what the state judge said in order (that the order did not prohibit firearm possession), etc. But all of these, if they are relevant at all, affect only whether the government can prove the necessary state of mind for the crime, not the constitutionality of §922(g)(8)
> . . . .

*Id*. at 226-27 (emphasis added).

In *United States v. Lippman*, 2008 WL 4661514 (D. N.D. Oct. 20, 2008), the Defendant sought to retroactively vacate his conviction under Section 922(g)(8) based on the Supreme Court's ruling in *Heller*.  Lippman contended the restraining order which gave rise to his conviction was improperly entered against him because the state court made no findings of fact as to his propensity for violence.

---

[3] Section 922(g)(8) was enacted by Congress in 1996 as part of the so-called Lautenberg Amendment to the Gun Control Act of 1968. *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008).

**ORDER DENYING**
**MOTION TO DISMISS-**          **4**

The court rejected the defendant's argument because:

> The Supreme Court in *Heller* found the District of Columbia statute to be unconstitutional only as to those individuals who were not disqualified from Second Amendment rights. The Supreme Court clearly stated that its opinion does not overturn the longstanding prohibition on the possession of firearms by felons and other prohibited persons. The right to possess firearms is not beyond the reach of all government regulations. Lippman has not provided any evidence to support a reversal of the Court's previous ruling.

*Lippman* at *3.

In its "previous ruling" in 2002, long before *Heller*, the district court had noted that even assuming the defendant had an individual right to bear arms regardless of militia purposes, he would still have to show that the restriction of his right to bear arms was not narrowly tailored or was unreasonable in scope. In its "previous ruling," the district court found it was clear that a person may be prohibited from possessing a firearm under Section 922(g)(8) and that other courts had consistently upheld the constitutionality of that section. *Id*. at *1 (citing cases, including *United States v. Hinostroza*, 297 F.3d 924, 927 (9th Cir. 2002)).

In *United States v. Luedtke*, 589 F.Supp.2d 1018, 1021 (E.D. Wis. 2008), the district court acknowledged that Section 922(g)(8) was not a "longstanding prohibition on the possession of firearms," but nevertheless concluded it was a regulation of the type traditionally permitted in this nation. The court found nothing in *Heller* which suggested Congress could not, based on further experience and study, "add[] to the list of dangerous individuals historically barred from firearm possession." *Id*. at 1023. Therefore, the district court rejected defendant's argument that Section 922(g)(8) was inconsistent with the historical practices discussed in *Heller*. *Id*.

The district court then addressed the defendant's contention that Section 922(g)(8) swept too broadly in applying to persons not found imminently dangerous by any court, and contained insufficient procedural protections. The

**ORDER DENYING MOTION TO DISMISS-    5**

court found there was no requirement under the Second Amendment that only those persons found imminently likely to engage in gun violence may be dispossessed of their firearms. *Id*. Secondly, the court found that although the procedural protections afforded under Section 922(g)(8) do not equal those afforded the criminally accused, there was no authority for the proposition that counsel, a jury and/or proof beyond a reasonable doubt are always required before a person may be stripped of a constitutional right. *Id*.[4] The court opined that the Second Amendment issue was best analyzed by comparing the challenged regulation to those deemed permissible under the Supreme Court's historical analysis. It also found, however, that Section 922(g)(8) would survive even if subjected to strict scrutiny analysis. *Id*. 1024-25.

Although the aforementioned cases expressly or impliedly employed a strict scrutiny analysis of Section 922(g)(8), it is noted that other courts have employed "intermediate scrutiny" in determining that certain prohibitions under 18 U.S.C. Section 922, although not specifically Section 922(g)(8), do not violate the Second Amendment. *United States v. Miller*, ___ F.Supp.2d ___, 2009 WL 499111 (W.D. Tenn. Feb. 26. 2009); *United States v. Radencich*, 2009 WL 127648 at *4-5 (N.D. Ind. Jan. 20, 2009); and *United States v. Schultz*, 2009 WL 35225 (N.D. Ind. Jan. 5, 2009). Intermediate scrutiny provides a less stringent standard, requiring that the suspect portions of a law only be "substantially related to an important government objective." *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910 (1988).

Defendant contends that since *Heller* rejected rational basis review of Second Amendment claims, this court is not prohibited from examining the Walla Walla County District Court order beyond its facial validity, as was the situation

---

[4] The district court noted that pursuant to Wisconsin law, the injunction issued against him specifically advised him that he was "prohibited from possessing a firearm until the expiration of this injunction." *Id*. at 1024 n.5.

**ORDER DENYING**
**MOTION TO DISMISS-         6**

under pre-*Heller* case law, specifically *Lewis v. U.S.*, 445 U.S. 55, 100 S.Ct. 915 (1980), and *U.S. v. Young*, 458 F.3d 998 (9th Cir. 2006). Defendant asserts that *Lewis* and *Young* can no longer be used as authority for the scope of Second Amendment protection because they are based on an incorrect premise that there is no individual right to possess a firearm.

In *Lewis*, the Supreme Court used the rational basis standard to uphold a predecessor felon in possession statute (predecessor to Section 922(g)) against a due process claim. The Court held that even though the petitioner's extant prior state-court felony conviction might be subject to collateral attack under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963)(right to counsel in criminal cases), it could still be used as a predicate for his subsequent conviction for possession of a firearm. The Court explained that "federal gun laws . . . focus not on reliability, but on the mere fact of conviction . . . in order to keep firearms away from potentially dangerous persons." 445 U.S. at 67. The Court contrasted that provision "with other federal statutes that explicitly permit a defendant to challenge, by way of defense, the validity or constitutionality of the predicate felony." *Id*. at 62. The Court concluded that "to limit the scope of [the predecessor to §922(g)] to a validly convicted felon would be at odds with the statutory scheme as a whole." *Id*. at 64.

In *Young*, the Ninth Circuit dealt with a due process challenge to Section 922(g)(8). The circuit noted that like the statute at issue in *Lewis*, Section 922(g)(8) does not allow for a challenge to the predicate offense. The only explicit requirement of the statute is that the defendant receive a hearing of which he had actual notice and an opportunity to participate. Thus, relying on *Lewis*, the circuit held that absent Congressional authorization, it would not entertain a collateral inquiry into the constitutionality of state court restraining order proceedings "which is immaterial except to the extent that the federal statute explicitly requires certain procedural protections." 458 F.3d at 1005. The circuit went on to find that

**ORDER DENYING**
**MOTION TO DISMISS-            7**

in accordance with the plain meaning of Section 922(g)(8), the term "hearing" refers to a proceeding of which the defendant had actual notice and an opportunity to participate. *Id*. at 1006. The circuit found that defendant had both actual notice of the relevant hearing and an opportunity to participate therein. The court rejected defendant's contention that he was required to be given notice of the content of the hearing, rather than simply notice of the hearing itself. The court found that Section 922(g)(8) did not require notice of the fact that a restraining order would issue, nor require any other form of "advance" notice. *Id*. The circuit also found that the plain text of the statute indicates the "opportunity to participate" requirement is a minimal one and the prosecution need only show that the defendant had an opportunity to participate in a proceeding in which he could have objected to the entry of the restraining order, or otherwise engaged with the court as to the merits of the restraining order. *Id*. at 1009.

This court has found no post-*Heller* case suggesting the limitation on collateral inquiry has been eliminated because of *Heller*. The Supreme Court in *Heller* did not purport to overrule *Lewis*. The *Heller* Court stated in a footnote (n. 25 at p. 2816) that *Lewis* did not involve a Second Amendment claim and that it was "inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case [*Lewis*] where the point was not at issue and was not argued."[5] *Heller* simply did not address the issue of collateral inquiry.

---

[5] The footnoted dictum in *Lewis* referred to by *Heller* was that "[t]hese legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties. See *United States v. Miller* [307 U.S.174, 59 S.Ct. 816 (1939)] . . . (the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to the preservation or efficiency of a well regulated militia')."

**ORDER DENYING
MOTION TO DISMISS-          8**

In *Luedtke*, cited *supra*, the district court found although the procedural protections under Section 922(g)(8) do not equal those afforded the criminally accused, there was no authority for the proposition that counsel, a jury and/or proof beyond a reasonable doubt are always required before a person may be stripped of a constitutional right. The district court then noted that **"even those courts which, pre-*Heller*, had adopted an 'individual rights' interpretation of the Second Amendment rejected challenges to procedures under §922(g)(8)(A)."** 589 F.Supp.2d at 1023, citing *United States v. Emerson*, 270 F.3d 203, 261-62 (5th Cir. 2001). (Emphasis added). The *Luedtke* court quoted the following from *Emerson*:

> Section 922(g)(8)(A) requires an actual hearing with prior notice and an opportunity to participate, and section 922(g)(8)(C)(ii) requires that the order "explicitly" prohibit the use (actual, threatened or attempted) of physical force that would reasonably be expected to cause bodily injury. Congress legislated against the background of the almost universal rule of American law that for a temporary injunction to issue [there must be a likelihood that irreparable harm will occur].
>
> We conclude that Congress in enacting section 922(g)(8)(C)(ii) proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph(C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected property by the party enjoined. We do not imply that Congress intended to authorize collateral review of the particular state court predicate order in section 922(g)(8)(C)(ii) prosecutions to determine whether in that individual case the state court adequately followed state law in issuing the order. What we do suggest is that Congress did not have in mind orders issued under a legal system whose rules did not approximate the above stated general minimum standards for the issuance of contested injunctive orders after notice and hearing.

270 F.3d at 261-62**.**

In *Emerson*, the Fifth Circuit found that Texas law met these "general minimum standards." The *Luedtke* district court concluded that Wisconsin law also met these standards which included: 1) specifying the burden of proof ("reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the

**ORDER DENYING
MOTION TO DISMISS-           9**

petitioner"); 2) a limitation on the length of an injunction (up to four years); and 3) a requirement that the respondent be advised of the applicable penalties under state law for firearm possession while under an injunction, and that he must "surrender any firearms that he or she owns or has in his or her possession to the sheriff of the county in which the action . . . was commenced." 589 F.Supp.2d at 1024.

In *Young*, the Ninth Circuit mentioned *Emerson*, observing the Fifth Circuit had "squarely rejected the contention that a federal court should probe into state court proceedings because 'nothing in section 922(g)(8) suggests that the validity of the particular predicate court order may be inquired into in the section 922(g)(8) criminal prosecution.'" 458 F.3d at 1004, n. 14, quoting *Emerson*, 270 F.3d at 213.

Even if strict scrutiny is now the appropriate standard for reviewing the constitutionality of Second Amendment regulations such as 18 U.S.C. Section 922(g)(8), a point that is subject to debate and far from certain, this court is not persuaded that this allows collateral inquiry into the validity of the facially valid Walla Walla County Superior Court "Mutual Order For Protection" issued on November 8, 1996 against the Defendant. It is undisputed that in accord with Section 922(g)(8)(A), that order was issued after a hearing of which the Defendant received actual notice[6], and in which he had an opportunity to participate, and did so participate.   In accord with Section 922(g)(8)(B), the order restrains the Defendant from harassing, stalking, threatening an "intimate partner," his ex-wife, or engaging in conduct that would place his ex-wife in reasonable fear of bodily injury. Finally, in accord with Section 922(g)(8)(C)(ii), the order "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against" Defendant's ex-wife "that would reasonably be expected to cause bodily

---

[6] Although the order did not indicate the manner in which Defendant received notice (personal service, service by mail, service by publication), the Defendant showed up at the hearing on the appointed date and at the appointed time, indicating he must have received notice of the hearing.

**ORDER DENYING**
**MOTION TO DISMISS-            10**

injury." The order states "Respondent [Defendant] is RESTRAINED from causing physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening or stalking . . . petitioner [Defendant's ex-wife]."

This court finds the version of RCW 26.50.060 that was in effect in 1996 when the restraining order was entered, complies with the "general minimum standards" referred to in *Emerson*. It is true this version of RCW 26.50.060, unlike the Wisconsin law at issue in *Luedtke*, did not provide for a limit on the length of the injunction and in fact, provided that the court could enter a permanent order of protection. RCW 25.50.060(2)(where "the court finds that the respondent is likely to resume acts of domestic violence against the petitioner . . . when the order expires, the court may either grant relief for a fixed period or enter a permanent order of protection"). Furthermore, unlike the Wisconsin law, the 1996 version of RCW 25.50.060 did not require that Defendant be advised of applicable penalties under state law for firearm possession while under an injunction and that he had to surrender any firearms. Defendant concedes, however, that possession of firearms "never was a violation of state law." (Ct. Rec. 71 at p. 9).[7] The fact the order could be made permanent and that Defendant was not specifically advised of any adverse legal consequences of the order relating to firearm possession does not mean the 1996 version of RCW 26.50.060 failed to meet the "general minimum standards" discussed in *Emerson* (notice, hearing, and a determination that there was a likelihood of harm). The Defendant was not precluded from seeking a modification of the mutual, permanent restraining order. Although Defendant claims he had no reason to seek modification of the order, this court finds that a reasonable person could have anticipated that being subject to such an order might have adverse legal

---

[7] It is also noted that 18 U.S.C. Section 922(g)(8) became effective in 1996 and therefore, was a brand new federal law at the time the restraining order was entered. It is possible the Walla Walla County Superior Court was not aware of the existence of the new federal law.

**ORDER DENYING**
**MOTION TO DISMISS-            11**

consequences related to the possession of firearms. The fact Defendant did not contest the issuance of the restraining order does not mean the "minimum standards" of due process were violated. *Emerson* concluded that court orders, issued after notice and hearing, could properly embrace the prohibitions of Section 922(g)(8)(C)(ii) if such "**were not contested** or evidence credited by the court reflected a real threat or danger of injury to the protected property by the party enjoined." (Emphasis added).

Because the court finds it cannot make collateral inquiry into the validity of the Walla Walla County restraining order, it must conclude that the facial validity of the order allows prosecution of the Defendant under Section 922(g)(8). Section 922(g)(8), even after *Heller*, is narrowly tailored to serve a compelling government interest, and/or is substantially related to an important government objective (reducing domestic violence). It is constitutional on its face, and as applied to Defendant.

Defendant's Motion To Dismiss (Ct. Rec. 63) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 26th day of March, 2009.

*S/ Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge